UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CHRISTOPHER ADAMS, | ) |
| *Plaintiff*, | ) Case No. 1:22-cv-125 |
| v. | ) Judge Travis R. McDonough |
| RANDALL LEWIS, LUKE BURNS, ALAN LEWIS, LISA HELTON, and SHAWN PHILLIPS, | ) Magistrate Judge Susan K. Lee |
| *Defendants*. | ) |

# MEMORANDUM & ORDER

Plaintiff has filed a pro se prisoner's civil rights complaint for violation of 42 U.S.C. § 1983 (Doc. 1), a motion for expedited screening (Doc. 2), a motion for the Court to order the United States Marshals Service to serve process (Doc. 3), and two motions for extensions of time within which to pay the filing fee (Docs. 6, 8). For the reasons set forth below, the Court will dismiss Plaintiff's claims against Defendants, deny Plaintiff's motions, and provide Plaintiff an opportunity to file an amended complaint.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff maintains that Defendants Randall Lewis, Luke Burns, and Alan Lewis, employees of the Tennessee Department of Correction ("TDOC"), conspired together to have Plaintiff transferred to the Trousdale Turner Correctional Center ("TTCC") as punishment for his prior TDOC lawsuits and grievances against Defendants. (*Id.* at 1–2.) One month prior to his transfer, Plaintiff received his annual reclassification hearing, wherein it was determined that he would remain a minimum-security inmate at the Bledsoe County Correctional Complex

("BCCX") and continue participation in the Tennessee Rehabilitative Initiative in Correction ("TRICOR) program. (*Id*. at 2–3.) Plaintiff contends that TDOC does not routinely transfer inmates, but rather, "allows them to remain at their assigned institutions indefinitely." (*Id*. at 2.)

Plaintiff was transferred from BCCX to TTCC on October 4, 2021. (*Id*. at 9.) In the months leading up to his transfer, Plaintiff made "almost weekly" complaints to TRICOR Shaw Wood Flooring Plant Manager Alan Lewis about various operations of the program. (*Id*. at 20.) The week prior to his transfer, Plaintiff verbally complained to Alan Lewis that the work schedule for the TRICOR program allowed some inmates to make far more money than others. (*Id*. at 8–9.) Plaintiff had previously filed a formal written grievance regarding plant operations naming Alan Lewis as a responsible party. (*Id*. at 9.)

In early September 2021, Plaintiff placed and paid for a commissary order that "went missing before he could pick it up." (*Id*.) Plaintiff made a verbal grievance to Unit Manager Randall Lewis, who also discussed the circumstances with Don Carter and commissary worker John Bennett. (*Id*. at 10.) Plaintiff informed Defendant Randall Lewis that he believed the commissary workers took his commissary. (*Id*. at 9–10.) Commissary worker Bennett is a worker in the shared office of Alan Lewis and Sergeant Burns. (*Id*. at 22.) Plaintiff maintains that Randall Lewis, Sergeant Burns, Carter, and Bennett "are all friends and spend a lot of time together." (*Id*. at 10.) Plaintiff alleges that Carter does not like him because one of his previous lawsuits affected the father of Sergeant Burns. (*Id*.) Plaintiff believes that after he left Randall Lewis' office, Lewis and Carter had a conversation about Plaintiff, and Carter "used this opportunity to inflame" Randall Lewis toward Plaintiff. (*Id*.)

Plaintiff previously won a civil judgment against Defendants' former colleague and Alan Lewis' predecessor, Dave Baker, and Alan Lewis was subpoenaed to provide documents in that

case that he failed to produce. (*Id*. at 10, 21.) Plaintiff also previously sued the Tennessee Board of Parole, and Defendants also know about that lawsuit. (*Id*. at 10.)

Plaintiff advised a fellow inmate of his grievance rights concerning a cell assignment by Sergeant Burns. (*Id*.) The inmate told Sergeant Burns of Plaintiff's advice, but when Burns questioned Plaintiff about his advice to the inmate, Plaintiff denied advising the inmate out of fear of retaliation. (*Id*.) Sergeant Burns "expressed his dissatisfaction" with Plaintiff advising the inmate. (*Id*. at 23.)

Plaintiff states that "on information and belief" a BCCX investigator contacted Randall Lewis on October 1, 2021, and inquired whether he had "any inmates that he wanted to get rid of." (*Id*. at 20.) Plaintiff states that Lewis then gave the investigator names for transfer, including Plaintiff's. (*Id*.) Plaintiff states, again based on "information and belief," that Randall Lewis, Sergeant Burns, and Alan Lewis conspired to have him transferred. (*Id*. at 23.) Since Plaintiff has been housed at TTCC, he has been informed that people in his former unit knew of his anticipated transfer the day before it occurred, which is a violation of TDOC transfer policy. (*Id*. at 24.)

Plaintiff alleges a number of negative consequences as a result of the transfer, including a loss of: safety, meals in the chow hall, a $10.22/hour job, lenient visitation privileges, participation in TRICOR's cognitive behavioral programs, daily outdoor recreation and the amenities at BCCX, such as a ball field, a walking track, and a tennis court, daily access to the library, participation in faith-based programs, approximately $10,000 in supplies and materials Plaintiff had accumulated in BCCX's hobby shop, and the ability to earn a free associate's degree. (*See generally* Doc. 1.)

3

Case 1:22-cv-00125-TRM-SKL   Document 9   Filed 05/24/22   Page 3 of 15   PageID #: 137

Plaintiff also maintains that TDOC Commissioner Lisa Helton, sued in her official capacity only, failed her statutory duty to prevent Plaintiff's retaliatory transfer or remedy the improper transfer once she was made aware of it. (*Id*. at 28–35.) Plaintiff alleges that BCCX Warden Shawn Phillips, also sued solely in an official capacity, failed his statutory duty to promulgate BCCX policies to prevent Plaintiff's retaliatory transfer. (*Id*. at 32–33.) Plaintiff believes Warden Phillips "illegally delegated his administrative transfer authority" to an institutional investigator. (*Id*. at 33.) After Plaintiff's transfer, he grieved allegations of reprisal to BCCX, and he believes that Warden Phillips was informed of the reprisals and simply ignored the allegations. (*Id*. at 35.)

Plaintiff asks the Court to award monetary and various injunctive relief for the deprivations alleged in the complaint. (*Id*. at 50–54.)

## II. PRISON LITIGATION REFORM ACT SCREENING STANDARDS

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B), 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999); *see also Randolph v. Campbell*, 25 F. App'x 261, 263 (6th Cir. 2001) (holding PLRA screening procedures apply even if the plaintiff pays entire filing fee). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim, however. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### III. ANALYSIS

#### A. Due Process

Plaintiff complains that his transfer to TTCC has resulted in the loss of privileges, including educational programs, vocational programs, rehabilitative programs, it has restricted visitation opportunities, and it has limited Plaintiff's access to the law library and a variety of recreation. (*See generally* Doc. 1.) To state a cognizable constitutional claim for the denial of these privileges and programs, Plaintiff must demonstrate that he had an interest in them protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life,

liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). To establish such an interest, Plaintiff must show that being deprived of that right or interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

None of the changed circumstances complained of by Plaintiff implicate a constitutional right. Plaintiff has no protected liberty interest in his housing or security classification, *Montanye v. Haymes*, 427 U.S. 236, 42 (1976); his visitation privileges, *Bazzetta v. McGinnis*, 430 F.3d 795, 803–05 (6th Cir. 2005) (concluding that even a prison's policy resulting in a permanent ban on visitation does not "rise[ ] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause"); rehabilitation, education, or employment, *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."); or unlimited or particular recreation, *Hatfield v. Daviess County Detention Center*, No. 4:17-CV-P12, 2017 WL 1731713, at *3 (W.D. Ky. May 2, 2017) (collecting cases).

Additionally, without legal injury, Plaintiff does not have standing to bring a due process claim regarding restricted library access. *See, e.g., Bradley v. Mason*, 833 F.Supp.2d 763, 773 (N.D. Ohio 2011) ("Furthermore, the lack of a law library does not per se deny the accused due process."). Therefore, the Court concludes Plaintiff has not stated a plausible due process claim regarding the loss of privileges or programs attendant to his transfer, and this claim will be dismissed.

### B. State Law/Policy

Plaintiff maintains that Defendants bear constitutional liability in this action based, in part, on their failure to carry out their duties under Tennessee law and/or TDOC policies. (*See*

Docs. 1, 2, 4–5, 8–9, 19, 24, 32.)  Specifically, Plaintiff maintains that the parties violated TDOC's policy on institutional transfers, Policy 403.01, by transferring him without a valid reason, not keeping the process confidential until it was complete, and allowing the decision to transfer to be delegated.  Plaintiff also argues TDOC Commissioner Helton and BCCX Warden Phillips' failure to carry out their statutory duties under Tennessee law subject them to liability in this action.

The TDOC transfer policy cited by Plaintiff is not a current policy.  *See* Tennessee Dep't of Corr., *Policies and Procedures*, https://www.tn.gov/correction/about-us/policies-and-procedures.html (last accessed May 19, 2022).  Regardless, Plaintiff's allegation that TDOC inmates are typically allowed to remain at an institution indefinitely is, in the Court's experience, patently untrue.  *See, e.g., Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) (noting "transfers are common among prisons" and to be expected).  In fact, the most recent inmate handbook available on TDOC's website specifically advises offenders that "[t]ransfers from one institution to another are likely to occur during your period of incarceration."  Tenn. Dep't of Corr., *Inmate Rules and Regulations, August 2018*, https://www.tn.gov/content/dam/tn/correction/documents/502-04OffenderHandbook.pdf (last accessed May 19, 2022).  In his complaint, Plaintiff notes that he has been assigned to BCCX on two separate occasions (Doc. 1, at 33), so it is apparent he has been transferred between facilities while in TDOC custody prior to October 2021.  Accordingly, Plaintiff has not presented any evidence that he had a justifiable expectation to remain housed at BCCX, and he cannot impose liability on Defendants for their mere failure to keep him housed there.

More importantly, however, claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*,

457 U.S. 922, 924 (1982). It does not provide redress for violations of state law or policy. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) ("Allegations of state law or state constitutional violations will not support a § 1983 claim."); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because a policy directive does not create a protectible liberty interest). Accordingly, Plaintiff's claims that Defendants failed to carry out their statutory duties and duties under TDOC policy fail to state a claim upon which relief may be granted, and these claims will be dismissed.

### C. Grievances

Plaintiff also complains that he grieved his transfer to Defendant Phillips, and that Defendant Phillips merely ignored Plaintiff's complaints of retaliatory transfer. (Doc. 1, at 35.) However, inmates have no constitutional right to a grievance procedure, and they therefore have no interest in having any such grievances satisfactorily resolved. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Further, Defendant Phillips cannot be held liable for failing to provide Plaintiff with a remedy through the grievance procedure, as "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Accordingly, any claim against Defendant Phillips related to his failure to respond to Plaintiff's grievances will be dismissed.

### D. Conspiracy

Plaintiff maintains that Defendants Randall Lewis, Sergeant Burns, and Alan Lewis conspired to transfer Plaintiff to TTCC to deter him from exercising his constitutional rights and

to punish Plaintiff for his prior lawsuits and grievances. (*Id*. at 25.) In support of this claim, Plaintiff contends that Randall Lewis and Sergeant Burns are close friends and are somehow related[1], that Sergeant Burns and Alan Lewis are lifelong friends, that Randall Lewis and Alan Lewis are related to one another. (*Id*. at 26.)

A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (citation omitted). In order to state a claim, Plaintiff must show the existence of a single plan, that the co-conspirators shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action was committed in furtherance of the conspiracy that injured the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). The conspiracy must be pled with particularity—vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (noting that allegations must be supported with factual allegations that render the claim "plausible," not merely "possible").

Plaintiff points to the close working relationship and/or familial relationship between Defendants, his knowledge that these Defendants "expressed dissatisfaction" about inmate complaints, their knowledge of Plaintiff's prior lawsuits and impact these lawsuits had on their friends or family, and the temporal proximity between Plaintiff's complaints of Randall Lewis and Adam Lewis, as evidence of a conspiracy. (Doc. 1, at 26–27.) It is not. These attenuated circumstances are not buttressed with any allegations of material facts that would support Plaintiff's conspiracy claim. For instance, he offers the Court no factual allegations to support

---

[1] Plaintiff actually claims that, upon "information and belief," Randall Lewis and Sergeant Burns' father are related. (Doc. 25, at 26.) The Court presumes, then, that Randall Lewis and Sergeant Burns are likewise related.

9

his "information and belief" that Plaintiff's "grievances and lawsuits have been a topic of conversation between" Randall Lewis, Sergeant Burns, and Alan Lewis, or that "the three of them as family, friends, and/or colleagues have agreed/conspired to have [Plaintiff] transferred as punishment and in retaliation." (*Id*. at 22–23.) Plaintiff has only "naked assertions" that there was an agreement between these Defendants to retaliate against Plaintiff, and his conspiracy claim will be dismissed. *See Twombly*, 550 U.S. at 557.

### E. Retaliation

Finally, the Court considers the lynchpin claim of Plaintiff's lawsuit, which is that his transfer was a retaliatory response to his previous lawsuits and/or grievances. To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

A prisoner's right to file non-frivolous grievances on his own behalf, whether written or oral, is protected conduct under the First Amendment, provided the prisoner exercise that right in accordance with legitimate prison regulations and/or penological objectives. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). The Court finds that Plaintiff has plausibly established that he engaged in protected conduct.

Plaintiff must next establish that an adverse action was taken against him that is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Thaddeus-X*, 175 F.3d at 396. Plaintiff has claimed that he lost vocational, educational, and rehabilitative

10

privileges as a result of his transfer, and that he was transferred to an institution housing more violent, higher-classification inmates. The Court finds these allegations sufficient to plausibly establish that an adverse action was taken against Plaintiff. *See, e.g., Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005) (holding a transfer to be adverse because he would have more difficulty meeting with attorney and lost high-paying job with which he could pay attorney); *Hill*, 630 F.3d at 475 (finding that a transfer to a more restrictive environment with fewer privileges constituted adverse action).

The third step Plaintiff must satisfy is establishing that that his transfer was motivated, at least in part, by protected conduct. *Siggers-El*, 412 F.3d at 699. If Plaintiff can make this showing, the Defendant then has the burden of showing that he would have taken the same action even absent the protected conduct. *Thaddeus-X*, 175 F.3d at 399. Given the difficulty in proving retaliatory intent, circumstantial evidence, such as the "temporal proximity" between the protected conduct and the adverse action, can provide evidence of a retaliatory motive. *Smith*, 250 F.3d at 1038. While the Sixth Circuit has cautioned against "the permissibility of drawing an inference of causation from temporal proximity alone," *Vereecke v. Huron Valley School District*, 609 F.3d 392, 400 (6th Cir. 2010), it has also found that, when pthe protected conduct and retaliatory acts occur close enough together, an inference may be created. *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475–76); *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004).

Plaintiff maintains that he was transferred to TTCC one month after he received an annual reclassification hearing recommending that he stay housed at BCCX, one week after he complained to Defendant Alan Lewis about conditions at the plant, and one month after he grieved the loss of his commissary items to Defendant Randall Lewis and implicated Sergeant

11

Burns' office worker in the event. It is plausible that this close temporal proximity suggests a retaliatory motive, but Plaintiff does not present the Court with any facts that would allow it to plausibly conclude that any of the named Defendants were a proximate cause of Plaintiff's transfer. Plaintiff has not presented the Court with any facts that Defendant Alan Lewis or Defendant Sergeant Burns took any action that could have foreseeably led to Plaintiff's transfer. *See King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (holding officer may be liable for natural consequences of his actions even if ultimate harm is executed by another). Plaintiff does allege that Defendant Randall Lewis asked for Plaintiff to be transferred, but he does not advise the Court how he has any knowledge as to what allegedly transpired in the phone call between Defendant Lewis and an investigator when the request was purportedly made. *See Smith v. Gen. Motors, LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (holding complaints made "on information and belief" cannot rest on conclusory allegations, but rather, "must set forth a factual basis for such belief").

The Court has already deemed Plaintiff's allegations of conspiracy wholly speculative, and the mere fact that these Defendants were allegedly friends who disliked prisoner complaints is not a constitutional violation. Absent any specific facts that would allow the Court to plausibly infer that each Defendant named was personally involved in a constitutional violation, process cannot issue against them. *See, e.g., Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a § 1983 claim).

Therefore, Plaintiff's current allegations fail to state a viable constitutional claim. However, the Court will allow Plaintiff an opportunity to file an amended complaint that identifies the person(s) to whom Plaintiff's transfer may be attributed, the specific factual basis

supporting that Defendant's liability, and Plaintiff's source of knowledge thereof. In allowing this amendment, the Court advises Plaintiff that the Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" supported by allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a), (d). Plaintiff's initial complaint, which exceeds 50 typewritten pages and is accompanied with another 50 pages of exhibits, contains repetitive factual allegations and irrelevant explanations of state policy and law. (Doc. 1.) It fails to comport with Rule 8.

Therefore, if Plaintiff wishes to proceed with this litigation, he is **ORDERED** to file within fourteen (14) days of entry of this order a single, comprehensive complaint not exceeding 10 pages in length that sets forth the following in concise language: the names of each Defendant, the constitutional claim(s) for relief attributable to that Defendant, the factual allegations supporting each claim, and the injuries (if any) suffered by Plaintiff.

Plaintiff is **NOTIFIED** that if he does not file the amended complaint by the deadline, the Court will **DISMISS** his complaint for failure to state a claim upon which relief may be granted.

Plaintiff is **NOTIFIED** that this amended complaint will be the sole operative complaint that the Court considers, and therefore, it **must** be complete in and of itself and must not refer to any previously filed allegations or pleadings. The Clerk is **DIRECTED** to mail Plaintiff a § 1983 form for this purpose.

Plaintiff is **NOTIFIED** that the Court **WILL NOT** consider any further amendments and/or supplements to the complaint or any other kind of motion for relief until after the Court has screened the complaint pursuant to the PLRA, which the Court will do as soon as practicable.

Accordingly, the Court will automatically deny any requests to further amend or supplement the complaint and/or motions filed before the Court has completed this screening.

## IV. MOTIONS

Also pending before the Court are Plaintiff's motions for expedited screening (Doc. 2), for extensions of time within which to pay the filing fee (Docs. 6, 8), and for the Court to order the United States Marshals Service to serve process in this action (Doc. 3). Inasmuch as Plaintiff has paid the filing fee and the Court has screened Plaintiff's complaint by entry of this order, Plaintiff's motions for extensions and expedited screening (Docs. 2, 6, 8) will be **DENIED** as moot.

Plaintiff asks the Court to order the Marshals Service to serve process in this cause because, as an inmate, it will be difficult for him to serve Defendants (Doc. 3). To the extent this issue is not moot given Plaintiff's failure to state a viable claim, it will otherwise be **DENIED**. Plaintiff is not proceeding *in forma pauperis,* and the mere fact of his incarceration is not good cause for burdening the United States Marshals Service with service when Plaintiff has not set forth any factual basis for why that is necessary.

## V. CONCLUSION

For the reasons set forth above, it is **ORDERED**:

1. Plaintiff has failed to state a viable constitutional claim against a named Defendant, and all Defendants are **DISMISSED** from this action;

2. Plaintiff shall have fourteen (14) days from entry of this order to submit an amended complaint in accordance with the directives above. The Clerk is **DIRECTED** to send Plaintiff a § 1983 form for this purpose;

3. If Plaintiff fails to timely submit an amended complaint, this action will be dismissed for failure to state a claim upon which § 1983 relief may be granted;

4. Plaintiff's motions (Docs. 2, 3, 6, 8) are **DENIED**; and

5. Plaintiff must immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**