UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| CHRISTOPHER ADAMS, | ) | |
|---|---|---|
| | ) | Case No. 1:22-cv-125 |
| *Plaintiff*, | ) | |
| v. | ) | Judge Travis R. McDonough |
| | ) | |
| RANDALL LEWIS, LUKE BURNS, | ) | Magistrate Judge Susan K. Lee |
| ALAN LEWIS, LISA HELTON, and | ) | |
| SHAWN PHILLIPS, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## MEMORANDUM & ORDER

Plaintiff has filed an amended complaint that is before the Court for screening in accordance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A (Doc. 10). For the reasons articulated below, Plaintiff's claim of retaliatory transfer will proceed as to Defendant Randall Lewis, and all remaining claims and Defendants will be dismissed.

### I. ALLEGATIONS OF AMENDED COMPLAINT[1]

On October 4, 2021, Plaintiff, an inmate housed at the Bledsoe County Correctional Complex ("BCCX"), was transferred to the Trousdale Turner Correctional Center ("TTCC"). (Doc. 1, at 1–2.) In September 2021, Plaintiff received his annual reclassification hearing, where it was determined that he would remain a minimum-security inmate at BCCX and continue participation in the Tennessee Rehabilitative Initiative in Correction ("TRICOR") program. (*Id.*

---

[1] In a prior Order, the Court provided Plaintiff the opportunity to file an amended complaint not exceeding ten pages in length, concisely setting forth the facts of his claims. (Doc. 9, at 13.) Rather than submitting his amended pleading on the § 1983 form sent to Plaintiff for this purpose, he has submitted a ten-page, single-spaced typed complaint accompanied by an unsolicited brief that is an additional fourteen pages in length. (*See* Doc. 10.)

at 4.) TDOC "has a custom of not transferring inmates from one institution to another unless they are a disciplinary problem or have programming needs unavailable at their current institution." (*Id.*)

Over the course of a few months before he was transferred to TTCC, Plaintiff made verbal grievances to TRICOR Plant Manager Alan Lewis about the fact that the program schedule gave some inmates disproportionately more program time. (*Id.* at 2.) In early September 2021, Plaintiff made a verbal grievance to Unit Manager Randall Lewis explaining that the commissary he paid for had gone missing before he could pick it up and that he believed commissary workers were responsible for the missing items. (*Id.*) A commissary worker gave Plaintiff different explanations as to why the commissary was missing, and Plaintiff witnessed that worker giving "his version" to Randall Lewis. (*Id.*)

Plaintiff previously won a civil judgment against Defendants' former colleague, Dave Baker, and three of Defendants' colleagues were subpoenaed to testify at the trial. (*Id.*) Plaintiff also previously filed suits against TDOC Commissioner Tony Parker and the Tennessee Board of Parole. (*Id.*) Additionally, Plaintiff advised inmate Jeff Trusty of his grievance rights concerning a cell assignment by Sergeant Burns. (*Id.*) When Sergeant Burns confronted Plaintiff about his advice to the inmate, Plaintiff denied advising the inmate out of fear of retaliation. (*Id.* at 6.) Defendants and other officials became "aloof" toward Plaintiff after he won a judgment against their colleagues and started pursuing other litigation. (*Id.* at 4–5.)

TDOC's institutional transfer policy was not followed in Plaintiff's case, as he was not a disciplinary problem or security threat, and he did not request a transfer. (*Id.* at 5.) Plaintiff obtained a copy of the October 4, 2021 transfer list through a public-records request and learned from a hub-office worker that he was the only inmate of twenty-seven transferees with no disciplinary history. (*Id.*)

According to the hub-office worker and a chain-bus worker, BCCX unit managers were contacted by an institutional investigator on October 1, 2021, inquiring as to whether they had any "troublesome inmates to get rid of." (*Id*.) The investigator contacted Randall Lewis with that inquiry, and Randall Lewis gave them Plaintiff's name, which led to his transfer. (*Id*. at 5–6.) On the day of his transfer, many officers expressed surprise to see Plaintiff being transferred. (*Id*. at 6.) In fact, when Plaintiff arrived at TDOC's Nashville hub, an officer who had known Plaintiff for years asked him, "Who'd you piss off?" (*Id*.) Plaintiff replied, "Randy Lewis." (*Id*.)

Many inmates have remained assigned to BCCX for up to forty years. (*Id*. at 2.) Plaintiff knows of many inmates who have been allowed to remain at their assigned facilities indefinitely, and the only difference between himself and those inmates is Plaintiff's exercise of his First Amendment rights. (*Id*. at 4.) Plaintiff has never been previously transferred except upon request. (*Id*.) Plaintiff, who has assisted BCCX's chain-bus staff as they have moved inmates, has observed that most inmates who are permanently transferred away from BCCX "have a history of disciplinary problems or filing grievances and/or lawsuits." (*Id*. at 5.)

As the result of his transfer to TTCC, Plaintiff lost his job assignment where he earned $10.22 per hour; the ability to participate in cognitive-behavioral programs; entitlement to post-incarceration assistance; daily outdoor recreation with numerous amenities; lenient prison library access; participation in philanthropic faith-based programs; some measure of personal safety; and participation in BCCX's hobby shop and approximately $10,000 in supplies. (*Id*. at 2–3.)

Randall Lewis, Sergeant Burns, and Alan Lewis have an interest in getting rid of Plaintiff to end Plaintiff's exercise of his rights. (*Id*. at 6.) Randall Lewis and Sergeant Burns have shared an office for four years and have been colleagues for approximately fifteen years. (*Id*.) Sergeant Burns and Alan Lewis grew up together and are still friends. (*Id*.) Randall Lewis and Alan Lewis are related to one another, as are Randall Lewis and the father of Sergeant Burns,

3

who was adversely affected by Plaintiff's litigation. (*Id*. at 6–7.) Defendants are also friends with the commissary workers Plaintiff complained about when his order went missing. (*Id*. at 7.)

Plaintiff has personally heard Randall Lewis, Sergeant Burns, and Alan Lewis discuss inmate grievances with dissatisfaction, and it is Plaintiff's "belief that they have discussed his" grievances and met to agree to have him transferred. (*Id*. at 7–8.) TDOC and BCCX have a custom of retaliating against inmates for the exercise of their First Amendment rights, and high-ranking administrative officials do not cause reasonable investigations into allegations of unlawful conduct by officials. (*Id*. at 8.) Plaintiff filed a formal grievance alleging retaliation, but that grievance was deemed inappropriate and denied without a grievance committee hearing. (*Id*.)

Plaintiff asks the Court to award monetary and various injunctive relief for the deprivations alleged in the amended complaint. (*Id*. at 9–10.)

## II.     PLRA SCREENING STANDARDS

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999); *see also Randolph v. Campbell*, 25 F. App'x 261, 263 (6th Cir. 2001) (holding PLRA screening procedures apply even if plaintiff pays entire filing fee). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter,

4

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim, however. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### III. ANALYSIS

#### A. Due Process, State Law, and Conspiracy

As an initial matter, the Court finds, for the reasons set forth in its Order screening Plaintiff's initial complaint, that Plaintiff's amended complaint fails to set forth a cognizable constitutional claim with regard to his allegations that Defendants violated state law and/or policy, that they conspired to violate Plaintiff's constitutional rights, or that Plaintiff's due process rights were violated by his transfer. (*See generally* Doc. 9.) The Court will not address these claims further.

## B. Equal Protection

The Court next considers Plaintiff's allegation that he was transferred while other inmates without disciplinary problems are allowed to remain at BBCX indefinitely. This allegation implicates the Equal Protection Clause, which provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. In order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp.*, 470 F.3d 286, 299 (6th Cir. 2006)).

Plaintiff cannot demonstrate that he has a fundamental right that has been burdened or that he is a member of a suspect class. *See Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983) (finding inmate has no protected interest in his housing); *Mader v. Sanders*, No. 02-6017, 2003 WL 21259676, at *2 ("Prisoners are not a suspect class, nor are classifications of prisoners."). Whether there is a rational basis for Plaintiff's transfer is not apparent from Plaintiff's pleadings, but Plaintiff's claim nonetheless fails because he does not set forth other facts from which the Court could plausibly infer that Defendants have treated individuals who are similarly situated to Plaintiff "in all relevant respects" differently. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (noting that the Equal Protection Clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike"). Accordingly, Plaintiff has failed to state a cognizable equal protection claim, and this claim will be dismissed.

## C. Retaliation

Plaintiff maintains that his transfer to BCCX was a retaliatory response to his previous lawsuits and/or grievances. To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff has alleged that he engaged in his First Amendment right to file non-frivolous grievances, that he was transferred to a less desirable facility shortly after making grievances, and that he was transferred due to Defendants' perception of him as a troublemaker. (*See generally* Doc. 10.) The Court finds, as it did in its prior Order, that Plaintiff has stated a plausible retaliation claim. (*Id.*) The Court now considers whether Plaintiff has named a viable Defendant.

### i. *Official Capacity*

Defendants Alan Lewis, Commissioner Helton, and Warden Shawn Phillips are sued solely in their official capacities. A defendant cannot be held legally responsible merely because of his or her supervisory status. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding that liability under § 1983 may not be imposed simply because a defendant "employs a tortfeasor"). Instead, to demonstrate a supervisor's liability, the plaintiff must demonstrate, at minimum, that the supervisory official "implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*

7

*v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).  However, a "mere failure to act" despite awareness of an employee's misconduct is not sufficient.  *Walters v. Stafford*, 317 F. App'x 479, 486–87 (6th Cir. 2009) (quotation omitted).  Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal,* 556 U.S. at 676.

Plaintiff's claims for monetary damages against Defendants Alan Lewis, Commissioner Helton, and Warden Phillips in their official capacities are barred by the doctrine of sovereign immunity.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513–14 (6th Cir. Nov. 17, 2021) (holding state officials sued in official capacity immune from suit under doctrine of sovereign immunity absent consent).

Plaintiff has also requested prospective relief in this action, and he argues that "for the Court to be able to grant [him] prospective relief[,] the official capacity Defendants will be necessary parties to this action."  (Doc. 10, at 24.)  However, Plaintiff has not alleged any facts from which the Court could infer that Defendant Alan Lewis took any affirmative action in this case to initiate or execute Plaintiff's allegedly retaliatory transfer.  Accordingly, Plaintiff's official-capacity claim against Defendant Alan Lewis will be dismissed.  *See, e.g., Iqbal,* 556 U.S. at 676.

Plaintiff maintains that Commissioner Helton and Warden Phillips bear liability in this action because of their tolerance to officials' custom of retaliating against inmates for the exercise of their First Amendment rights without investigation or promulgation of appropriate policies to combat the practice.  (Doc. 10, at 8–9.)  Plaintiff's request for prospective injunctive relief is not necessarily barred by sovereign immunity, as the *Ex Parte Young* exception to sovereign immunity holds that:

> [I]ndividuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties...an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Ex Parte Young*, 209 U.S. 123, 155–56 (1908). Under this doctrine, "an action against a state official must be 'based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional' in order to avoid the bar of the Eleventh Amendment." *Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 459 n. 9 (6th Cir. 1982) (quoting *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689–90, (1982)). Therefore, the state official must have some connection with the enforcement of the allegedly unconstitutional action in order to be a proper party to suit. *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n. 5 (6th Cir. 1982) (quoting *Ex Parte Young*, 209 U.S. at 157).

As noted above, Plaintiff has alleged that he was subjected to an institutional transfer upon the direction of his unit manager. He has not shown how Defendants Helton or Phillips authorized any unconstitutional behavior through their own conduct or through any administrative process. Moreover, the custom these Defendants are alleged to impermissibly tolerate is Plaintiff's "belief" that "officials are never punished through disciplinary proceedings for retaliation against inmates" and/or that they have failed to promulgate policies to police the practice. (*Id.* at 9.) This conclusory allegation, which is apparently based on Plaintiff's observation that no one received disciplinary action for his allegedly retaliatory transfer, is an insufficient factual basis to state a claim. *See Smith v. Gen. Motors, LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (holding complaints grounding claims on belief must set forth a sufficient factual basis for that belief). Therefore, as Plaintiff has not demonstrated a sufficient connection between Defendants Alan Lewis, Helton, or Phillips with an allegedly unconstitutional action, Plaintiff's official-capacity claims against them will be dismissed.

### ii. *Individual Capacity*

Plaintiff has also sued Alan Lewis and Randall Lewis in their individual capacities. However, as the Court noted above, Plaintiff has not alleged any facts that would render Alan Lewis liable in this action, and he will be dismissed.

Plaintiff has alleged, however, that a hub worker and a chain-bus worker informed him that an institutional investigator contacted BCCX unit managers on October 1, 2021, to inquire whether they had any transfer requests for "troublesome inmates," and that Unit Manager Randall Lewis subsequently gave the investigator Plaintiff's name for transfer. (*See* Doc. 10, at 5–6.) While Plaintiff has not advised the Court how he knows that Randall Lewis is the individual who requested Plaintiff's transfer, the Court finds that Plaintiff may be able to state a claim against Defendant Lewis if this action is allowed to proceed as to this Defendant. Therefore, the Court will allow a retaliation claim to proceed against Unit Manager Randall Lewis.

## IV. CONCLUSION

For the reasons set forth above, it is **ORDERED**:

1. The Court finds that Plaintiff has stated a plausible claim of retaliatory transfer against Defendant Randall Lewis;

2. The Clerk is **DIRECTED** to send a Plaintiff service packet (a blank summons and USM 285 form) for Defendant Randall Lewis;

3. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this Order;

4. At that time, the summons will be signed and sealed by the Clerk and returned to Plaintiff for service;

5. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packet, this action will be dismissed;

6. Defendant shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

7. All remaining claims and Defendants are hereby **DISMISSED**; and

8. Plaintiff is **ORDERED** to immediately inform the Court and Defendants their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**