UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| CHRISTOPHER ADAMS, | ) |  |  |
|---|---|---|---|
|  | ) |  |  |
| Plaintiff, | ) |  |  |
|  | ) | No.: | 1:22-CV-125-SKL |
| v. | ) |  |  |
|  | ) |  |  |
| RANDALL LEWIS, | ) |  |  |
| LISA HELTON, and | ) |  |  |
| SHAWN PHILLIPS, | ) |  |  |
|  | ) |  |  |
| Defendants. | ) |  |  |

## MEMORANDUM OPINION AND ORDER

Christopher Adams, an inmate in the Tennessee Department of Correction ("TDOC") proceeding pro se in a civil rights action, alleges that he was subjected to a retaliatory prison transfer [Doc. 10]. Defendants have filed a motion to dismiss Plaintiff's operative complaint for failure to state a claim [Doc. 35], Plaintiff has filed a response opposing the motion [Doc. 52], and Defendants have filed a reply [Doc. 54]. Having fully considered the parties' arguments and the applicable law, the Court finds that Defendants' motion to dismiss should be denied.

I.     **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When considering a plaintiff's claims, all factual allegations in the complaint must be taken as true. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

## II.     RELEVANT ALLEGATIONS OF AMENDED COMPLAINT

Relevant remaining factual allegations, which are taken as true, include that around September 17, 2021, Plaintiff received his annual reclassification hearing, wherein it was determined that he would remain at a minimum-security inmate at the Bledsoe County Correctional Complex ("BCCX") and continue participation in the Tennessee Rehabilitative Initiative in Correction program [Doc. 10 p. 4]. However, on October 4, 2021, Plaintiff and twenty-six other inmates, many of whom Plaintiff knew to have disciplinary histories unlike him, were transferred from the BCCX to the Trousdale Turner Correctional Center ("TTCC") [*Id*. at 3, 5].

In the weeks and months leading up to his transfer, Plaintiff had made a series of verbal grievances to various BCCX officials, including Defendant Randall Lewis [*Id*. at 1-2]. Moreover, Plaintiff won a civil judgment against Defendants' colleague in 2020, and had also filed suits against TDOC Commissioner and the Tennessee Board of Parole [*Id*.]. Despite an earlier history of openly discussing prison procedures around Plaintiff, BCCX officials, including Defendant Lewis, became "aloof" toward Plaintiff after he won his civil judgment and began pursuing other litigation/grievances [*Id*. at 4-5].

Plaintiff was informed by a hub officer worker and a chain bus worker that BCCX unit managers were contacted by an institutional investigator on October 1, 2021, inquiring as to whether they had any "troublesome inmates to get rid of" [*Id*. at 5-6]. The investigator contacted Defendant Lewis with that inquiry, and Defendant Lewis "gave them [Plaintiff's] name because of his protected activities" [*Id*. at 6]. Had Defendant Lewis not given Plaintiff's name to the investigator, Plaintiff "would not have been transferred." [*Id*.]. Moreover, Plaintiff had assisted BCCX's bus staff "on and off since 2006" and, based on his personal observation, inmates

2

transferred for population management typically had a history of disciplinary problems or a history of filing lawsuits and/or grievances [*Id*. at 5].

On the day of Plaintiff's transfer, many officers expressed surprise to see Plaintiff being transferred, as Plaintiff was not a disciplinary problem or security threat [*Id*. at 6]. Plaintiff obtained a copy of the October 4, 2021, transfer list through a public records request and learned from a hub office worker that he was the only inmate of twenty-seven transferees with no disciplinary history [*Id*. at 5]. Plaintiff knows of many inmates who have been allowed to remain at their assigned facilities indefinitely, and the only difference between himself and those inmates is Plaintiff's exercise of his First Amendment rights [*Id*. at 4].

As a result of his transfer to TTCC, Plaintiff lost, among other things, personal property, a high-wage job assignment, and the ability to participate in various educational, recreational, and faith-based programs [*Id*. at 2-3]. Plaintiff contends that his personal safety has also been compromised by the transfer, as TTCC "is one of the most, *or the most*, dangerous and least privileged prison in the state" [*Id*. at 3 (emphasis in original)].

## III. ANALYSIS

In order for Plaintiff to establish that his transfer to BCCX was a retaliatory response that violated his First Amendment rights, Plaintiff must allege (and ultimately prove) that (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citations omitted).

As to the first element, the parties do not appear to dispute that Plaintiff has alleged that he engaged in protected conduct or that the filing of non-frivolous grievances serves as protected First Amendment conduct, *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018), as may the filing of non-frivolous lawsuits against prison officials. *Thaddeus-X*, 175 F.3d at 395-96. Instead, Defendants' motion is premised on two arguments: (1) Plaintiff's lateral transfer does not qualify as an adverse action; and (2) Plaintiff has failed to plausibly allege that Defendant Lewis had the personal involvement in his transfer required to support a claim under § 1983 [Doc. 35].

Specifically, Defendants argue that a lateral prison transfer "cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (citing cases) (internal quotation marks omitted). They submit that an exception to this general rule is applicable only when a prisoner makes a showing that Defendants were aware of "foreseeable, negative consequences" that "inextricably followed" as a result of the transfer. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (cleaned up). Defendants maintain that Plaintiff cannot demonstrate that Defendants were aware of any such consequences as a result of his transfer.

In considering Defendants' arguments, the Court first notes that *Jones* was dismissed on summary judgment after the parties had been provided an opportunity to factually develop their cases. Additionally, *Jones* cautions whether a retaliatory action is sufficiently adverse is a question of fact. *Jones*, 421 F. App'x at 553 (citing *Siggers-El v. Barlow*, 412 F.3d 693, 703-04 (6th Cir. 2005)). Moreover, because "there is no justification for harassing people for exercising their constitutional rights," the deterrent effect "need not be great to be actionable." *Thaddeus – X*, 175 F.3d at 398; *see also Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994) ("Retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment.") (citation omitted).

4

Turning to the relevant allegations, Plaintiff alleges that as a result of his prison transfer, he lost property; a high-wage job; participation in rehabilitative, cognitive behavioral programs; lenient access to the library, the hobby shop, and recreational opportunities; and was subjected to a more violent prison environment [Doc. 10 at 2-3]. The Court finds Plaintiff has sufficiently alleged an adverse action. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (finding transfer to facility with more restrictions and fewer privileges adverse); *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) (finding loss of job and transfer to facility further away from attorney to constitute an adverse action); *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002) (finding adverse punishment includes confiscating property and legal papers); *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding threat to have prisoner moved so that he would lose job, when combined with threat to have prisoner moved to location where family could not visit, to constitute an adverse action); and *Reynolds v. Green*, 25 F. App'x 256, 261 (6th Cir. 2001) (finding adverse action where prisoner was transferred from facility where he could "come and go with permission" to one where he could not).

This does not end the Court's inquiry, however, as Plaintiff's allegations must also plausibly allege that the adverse action was motivated, at least in part, by his protected conduct. *Thaddeus-X*, 175 F.3d at 399. Here, Plaintiff alleges that he made a series of grievances in the weeks and months leading up to his transfer. Plaintiff maintains that he underwent an annual reclassification hearing two weeks before his transfer, and that, as a result of that hearing, he was classified to remain at BCCX and continue participating in programs there. Plaintiff has also alleged that population management and administrative transfers typically affect inmates that unlike him, have disciplinary and/or security threat histories. The Court finds these allegations, construed most favorably to Plaintiff, support an inference of retaliatory motive. *See King v. Zamiara*, 680 F.3d 686, 695-96 (6th Cir. 2010) (noting "temporal proximity between protected

5

conduct and retaliatory acts" historically found to "creat[e] an inference of retaliatory motive"); *Hill*, 630 F.3d at 475 ("[B]ecause of the difficulty in producing direct evidence of an official's retaliatory motive, circumstantial evidence can suffice. This circumstantial evidence can include the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action.") (citation and internal citation omitted).

Finally, the Court addresses Defendants' claim that Plaintiff has not sufficiently alleged Defendant Lewis' personal involvement in constitutional wrongdoing so as to support the remaining claim against him in his individual capacity. Respectfully disagreeing, Plaintiff has claimed that on October 1, 2021, Defendant Lewis gave Plaintiff's name to an institutional investigator for transfer to a prison with less favorable conditions because of Plaintiff's protected conduct [Doc. 10 p. 6]. These facts, if proved, would demonstrate that Defendant Lewis was involved in Plaintiff's allegedly retaliatory transfer. *See, e.g., King*, 680 F.3d at 695 (holding officer liable for foreseeable consequences of actions even if ultimate harm is executed by another) (citations omitted).

Accordingly, the Court finds that Plaintiff has sufficiently alleged that Defendant Randall Lewis took an adverse action against him in retaliation for protected activities, and Plaintiff's claim survives Defendants' motion.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss [Doc. 35] is **DENIED**, and Defendants are **ORDERED** to file a response to Plaintiff's Amended Complaint within twenty-one (21) days of entry of this Order.

The Clerk is **DIRECTED** to lift the stay of these proceedings and place this case on the active docket. The parties are **ORDERED** to file any desired updates or supplements to the pending motion for a protective order [Doc. 49] within twenty-one (21) days of entry of this Order.

**SO ORDERED.**

**ENTER.**

                                s/ *Susan K. Lee*
                                SUSAN K. LEE
                                UNITED STATES MAGISTRATE JUDGE